1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CANCER CENTER ASSOCIATES FOR RESEARCH AND EXCELLENCE, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PHILADELPHIA INSURANCE COMPANIES, PHILADELPHIA INDEMNITY INSURANCE COMPANY,**<br><br>**Defendants.** | **1:15-CV-00084 LJO MJS**<br><br>**ORDER RE MOTION TO DISMISS (Doc. 7)** |

Cancer Center Associates for Research and Excellence ("cCare" or "Plaintiff") brings this lawsuit against Philadelphia Indemnity Insurance Company ("Philadelphia") and Philadelphia Consolidated Holding Corporation ("PCHC"), erroneously sued as Philadelphia Insurance Company ("PIC"), for breach of contract, declaratory judgment, and tortious breach of the covenant of good faith and fair dealing, all claims arising out of a coverage dispute regarding Private Company Protection Plus policy number PHSD831802 issued by Philadelphia to cCare for the policy period of April 1, 2013 to April 1, 2014 ("the Policy"). Complaint ("Compl."), Doc. 1. On March 5, 2015, Defendants filed a motion to dismiss, arguing, among other things, that: (1) Plaintiff's entire complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because the Policy contains a mandatory arbitration provision; and (2) Plaintiff's complaint should be dismissed as against PCHC pursuant to Fed. R. Civ. P. 12(b)(6) because PCHC is not a party to the Policy. Doc. 7.

1

# I. <u>FACTUAL BACKGROUND</u>

A former employee and shareholder of cCare filed a lawsuit against cCare, alleging various employment related claims. Compl. at ¶ 31. cCare tendered the lawsuit to Defendants. *Id*. Upon receiving notice of the underlying claim, Philadelphia issued a reservation of rights that included notice to cCare that the Policy only provides coverage for "reasonable and necessary" legal fees and costs, which includes only reasonable and necessary hourly rates for defense counsel retained by the Insured. *See id*. at ¶¶ 31, 38. Philadelphia refused to pay the hourly rate charged by cCare's chosen counsel ($457/hour), agreeing to pay only "PIIC's panel rates of $185/hr for partner[s]." *Id*. at ¶ 38.

On April 24, 2014, cCare filed an action against Defendants, Case No. 1:14-cv-00789 WBS GSA, alleging breach of contract, declaratory judgment regarding coverage under the Policy, and bad faith. *See* Request for Judicial Notice ("RJN"), Exh. A.[1] Defendants moved to dismiss the entire action, arguing that each of cCare's claims is subject to a mandatory arbitration provision in the Policy, which provides:

> Any dispute relating to this Policy or the alleged breach, termination or invalidation thereof, which cannot be resolved through negotiation between any Insured and the Underwriter, shall be submitted to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such Insured, one arbitrator selected by the Underwriter and a third independent arbitrator selected by the first two arbitrators.

*See* Declaration of Brian D. Harrison in Support of Motion to Dismiss ("Harrison Decl."), Exh. A, Doc.

---

[1] Documents from the casefile of the prior litigation in this Court are indisputably subject to judicial for their existence and content, not the truth of the matters asserted therein. *See U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue"); *San Luis & Delta–Mendota Water Auth. v. Salazar*, 686 F. Supp. 2d 1026, 1031 (E.D. Cal.2009) (taking judicial notice of public records published by administrative bodies). While the court may take judicial notice of these types of documents, those documents are judicially noticeable "only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal.2004).

8-1, ("Policy") at POL 0043.[2] cCare did not oppose Defendants' motion to dismiss. Instead, cCare

agreed that the claims were subject to arbitration, and stipulated to dismiss the action without prejudice

and resolve the claims in arbitration, as provided by the Policy. RJN, Exh. B. The parties' stipulation

stated, in relevant part:

> cCare and Defendants have agreed to submit the issues set forth in the complaint to binding arbitration pursuant to the terms of Part 6, Section XIV.B. of Policy No.PHSD831802 issued to cCare, effective April 1, 2013 to April 1, 2014 (the "Policy"), except for the following:
>
> A. In lieu of administration by the American Arbitration Association ("AAA"), the parties agree that the arbitration will be administered by an individual or entity mutually agreed to by the parties.
>
> B. PCHC reserves the right to contend that it is not a proper party to the issues in dispute in this matter but agrees to submit this dispute to arbitration and agrees that it will not make any motion or request to be removed from the case until after cCare has been given the opportunity to conduct discovery on whether PCHC is an "Underwriter" of the Policy as defined by the Policy.
>
> THEREFORE, and based upon the foregoing, the parties hereto stipulate and agree as follows:
>
> That the disputes in this action will be submitted to arbitration pursuant to the terms of Part 6, Section XIV.B. of the Policy, consistent with the agreements in the paragraphs above; and That this action will be dismissed, without prejudice.

*Id*. On July 9, 2014, pursuant to this stipulation, Senior Judge William B. Shubb dismissed the action

without prejudice and ordered the action submitted to arbitration. *See id*.

Both parties consented to arbitrate before the AAA. *See* Compl. at ¶¶ 53-55. On or about October

10, 2014, cCare advised the AAA of the arbitrator it had selected. *Id*. at ¶ 54. On or about November 14,

2014, Philadelphia advised the AAA that it objected to the arbitrator selected by cCare and requested

that the AAA indicate cCare's chosen arbitrator would not be allowed to serve. *Id*. at ¶ 55. On or about

---

[2] The Court considers the Policy pursuant to the "incorporation by reference" doctrine, which applies to documents on which "the plaintiff's claim depends ..., the defendant attaches [] to its motion to dismiss, and the parties do not dispute the authenticity of ..., even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1    December 13, 2014, the AAA informed the parties that cCare's chosen arbitrator "will be removed,"

2    because, absent "agreement for the party appointed neutrals to be non-neutral, the arbitrators must meet

3    the standards of [AAA Commcercial Arbitration] Rule R-18 with respect to impartiality and

4    independence" *Id*. at ¶ 57.

5            cCare initiated this lawsuit on January 16, 2015, alleging, among other things, that Philadelphia's

6    refusal to allow arbitration to occur in a manner consistent with the arbitration agreement constitutes

7    waiver of the right to arbitrate. *Id*. at ¶ 59.

8                                        **II. DISCUSSION**

9    **A.      Motion to Dismiss Arbitrable Claims Pursuant to Fed. R. Civ. P. 12(b)(1).**

10           **1.      Legal Standard.**

11           Philadelphia moves to dismiss the Complaint against Philadelphia for lack of subject matter

12   jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Although section four of the Federal Arbitration Act

13   ("FAA") provides for the filing of a motion to "compel" arbitration, courts have held that a Rule

14   12(b)(1) motion to dismiss for lack of subject matter jurisdiction "is a procedurally sufficient mechanism

15   to enforce [an] [a]rbitration [p]rovision." *Filimex, L.L.C. v. Novoa Investments, L.L.C.*, No. CV 05–

16   3792–PHX–SMM, 2006 WL 2091661, at *2 (D. Ariz. July 17, 2006); *see also GT Sec., Inc. v. Klastech*

17   *GmbH*, No. C-13-03090 JCS, 2014 WL 2928013, at *17-18 (N.D. Cal. June 27, 2014).

18           Once subject matter jurisdiction is challenged, the burden of proof is placed on the party

19   asserting that jurisdiction exists. "When a defendant brings a motion to dismiss for lack of subject matter

20   jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the burden of establishing subject matter

21   jurisdiction." *Friends of the River v. U.S. Army Corps of Engineers*, 870 F. Supp. 2d 966, 972 (E.D. Cal.

22   2012) (citing *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102, n. 1 (9th Cir. 2007) ("Once

23   challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.")).

24           A challenge pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214,

25

                                                4

1212 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in

the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that

the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *Safe Air for*

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes

that the allegations in the complaint are true and draws all reasonable inferences in favor of the party

opposing dismissal. *Wolfe*, 392 F.3d at 362. "By contrast, in a factual attack, the challenger disputes the

[very] truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe*

*Air*, 373 F.3d at 1039. In resolving this type of challenge, the court "need not presume the truthfulness of

the plaintiff's allegations." *Id*. (citation omitted). Instead, the court "may review evidence beyond the

complaint without converting the motion to dismiss into a motion for summary judgment." *Id* (citations

omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to

dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any

other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject

matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989).

   Here, despite offering numerous documents for consideration, Philadelphia does not actually

attack the substance of Plaintiff's factual allegations related to jurisdiction. Accordingly, the motion will

be treated as a facial one and the only extra-record documents the Court will consider are those subject

to the incorporation by reference doctrine or judicial notice. *See supra* notes 1-2; *infra* note 3.

   The FAA establishes a national policy of judicial enforcement of privately made agreements to

arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Specifically, FAA § 2

provides that:

> A written provision in any maritime transaction or a contract evidencing a
> transaction involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal to
> perform the whole or any part thereof, or an agreement in writing to
> submit to arbitration an existing controversy arising out of such a contract,
> transaction, or refusal, shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

FAA § 4 provides that arbitration of a dispute may be compelled if (1) there is a written agreement to arbitrate, (2) the dispute falls within the scope of the arbitration agreement, and (3) a party to the arbitration agreement refuses to arbitrate. 9 U.S.C. § 4. The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Here, it is undisputed that the Policy is a contract involving interstate commerce and contains an agreement to arbitrate. *See Krivitsky v. Am. Bankers Ins. Co. of Fla.*, 2014 WL 2452957, at *2 (C.D. Cal. Mar. 20, 2014) (reviewing cases and concluding that the FFA applies to insurance contracts).

### 2.   Analysis.

#### a.   Second Cause of Action for Declaratory Relief Regarding Waiver.

Plaintiff's second cause of action seeks a declaration that Defendants have waived the right to arbitrate by refusing to comply with a prior order of this Court regarding submission of the dispute to arbitration and by refusing to allow arbitration to proceed in a manner consistent with the arbitration agreement. Compl. at ¶ 59. Philadelphia moves to dismiss this claim on the ground that it raises claims that are not subject to this Court's jurisdiction. Doc. 7 at 7. Central to this dispute is the arbitration clause itself, which provides:

> Any dispute relating to this Policy or the alleged breach, termination or invalidation thereof, which cannot be resolved through negotiation between any Insured and the Underwriter, shall be submitted to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such Insured, one arbitrator selected by the Underwriter and a third independent arbitrator selected by the first two arbitrators.

Policy at POL 0043 (emphasis added). Philadelphia concedes that this language precludes application of

6

the AAA's Commercial Arbitration Rules and Arbitration Procedures ("AAACA Rules") regarding the

number and method of arbitrator selection, such as AAA Rule 12, which provides:

> If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:
>
> (a) The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.
>
> (b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.
>
> (c) Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

Harrison Decl., Ex. I.[3] However, Philadelphia maintains that AAACA Rules 8 (Interpretation and

Application of Rules), 13 (Direct Appointment by a Party), 17 (Disclosure), and 18 (Disqualification of

Arbitrator), do apply, because those rules pertain to issues other than the selection (or choosing) of

arbitrators. Doc. 7 at 7. Specifically, Philadelphia points to AAACA Rule 18(a), which requires that any

---

[3]  The Court may take judicial notice of the AAA's Commercial Arbitration Rules, as the content of those Rules can be considered a "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201; *see also Chavarria v. Ralphs Grocer Co.*, 812 F.Supp.2d 1079, 1087 n. 8 (C.D. Cal. 2011) (taking judicial notice of the AAA Rules); *Wilson v. United Health Group, Inc.*, 2012 WL 6088318, at *4 n. 4 (E.D. Cal. Dec. 6, 2012) (same); *Collins v. Diamond Pet Food Processors of California*, LLC, No. 2:13-CV-00113-MCE, 2013 WL 1791926, at *6 (E.D. Cal. Apr. 26, 2013).

1    arbitrator shall be impartial and independent and that any arbitrator may be disqualified and removed for

2    partiality or lack of independence. *See id*. at 17. Also, AAACA Rule 17 sets forth the requirements of

3    disclosure for any person appointed to be an arbitrator to ensure impartiality and independence. *See id*.

4    Further, AAACA Rule 13(b) provides that where the parties have agreed to each name an arbitrator,

5    such arbitrators must meet the standards of Rule 18 with respect to impartiality and independence unless

6    the parties have specifically agreed pursuant to Rule 18(b) that the party-appointed arbitrators are to be

7    non-neutral and need not meet those standards. *See id*. 16.

8            As a threshold matter, Philadelphia argues that this Court does not have jurisdiction to adjudicate

9    Plaintiff's declaratory relief claim because the parties expressly delegated to the AAA and/or the

10   arbitration panel the authority to make decisions pertaining to the interpretation of the AAACA Rules.

11   *See* Doc. 7 at 8. In support of this position, Philadelphia cites several cases that stand for the proposition

12   that the validity of an arbitration clause is a matter for the arbitrator to determine where the agreement so

13   provides. *See, e.g., Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1025 (C.D. Cal. 2009)

14   (arbitration agreement provided for disputes over interpretation or validity of the agreement to be

15   submitted to the arbitrator). *Madrigal v. New Cingular Wireless Servs*., Inc., No. 09-CV-00033-OWW-

16   SMS, 2009 WL 2513478, at *4 (E.D. Cal. Aug. 17, 2009), for example, considered an arbitration

17   agreement that incorporated the AAACA Rules, including AAACA Rule 7, which provides that "[t]he

18   arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with

19   respect to the existence, scope or validity of the arbitration agreement." *Id*. at *5 (collecting numerous

20   cases). This incorporation by reference was deemed a clear and unmistakable expression of the parties'

21   intent to have the arbitrator decide disputes over the scope of the arbitration agreement, requiring the

22   court to grant a motion to compel arbitration of a claim concerning scope of that agreement. *Id*. at *6.

23           AAACA Rule 8 provides related authority to the arbitrator and/or the AAA to interpret its own

24   rules:

25

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

Here, the Policy incorporates the AAA rules, "except with respect to the selection of the arbitration panel." Neither Rule 7 nor Rule 8 concerns selection of the arbitration panel, so are incorporated by reference into the Policy. As was the case in *Madrigal*, incorporation of the AAACA Rules, including AAACA Rules 7 and 8, evidences a clear an unmistakable intent to refer to arbitration disputes over the interpretation of the scope of the arbitration agreement and interpretation of the AAACA Rules themselves. However, Plaintiff's second cause of action alleges that Defendants have waived and/or are estopped from arguing that Plaintiff's claims are subject to arbitration. This is a threshold argument adjudication of which does <u>not</u> require interpretation of the scope of the arbitration agreement or interpretation of the AAA CA Rules. Therefore, this Court has jurisdiction to adjudicate this claim.[4]

Under certain circumstances, waiver may be a threshold issue suitable for adjudication by the Court. *See Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 443-44 (2012), as modified (Apr. 25, 2012) ("[F]ederal and California courts may refuse to enforce an arbitration agreement 'upon such grounds as exist at law or in equity for the revocation of any contract,' including waiver."); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 (9th Cir. 2008) (confirming that it is for the Court to

---

[4] Relatedly, Defendants argue that Plaintiff's waiver claim presents "[p]rocedural disputes over the application of the AAA rules ... [which] are not proper questions for adjudication by the Court." Doc. 16 at 5. Defendants maintain that *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), supports this argument. In *Howsam*, the Supreme Court indicated that "in the absence of an agreement to the contrary... issues of procedural arbitrability, i.e., whether prerequisites [in the arbitration clause] such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85. In *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008) however, the Ninth Circuit interpreted *Howsam* narrowly, to apply only to certain types of "gateway issues" including "whether an arbitration clause in concededly binding contract applies to a particular type of controversy" and "procedural questions which grow out of the dispute and bear on its final disposition." These are to be distinguished from "whether the parties are bound by a given arbitration clause," a question for a court to decide. *Id.* Here, the issues raised by Plaintiff at least arguably fall within the latter category, as Plaintiff argues Defendants have waived their right to invoke the arbitration clause itself by raising objections to the arbitrators.

1   decide a party's challenge to enforcement of an arbitration clause on the grounds that the opposing party

2   breached the agreement to arbitrate and therefore had no right to enforce the clause or, alternatively,

3   waived the right to arbitrate). Under California law, a court should consider the following factors when

4   determining whether the right to arbitrate has been waived:

5              (1) whether the party's actions are inconsistent with the right to arbitrate;
              (2) whether the litigation machinery has been substantially invoked and
6              the parties were well into preparation of a lawsuit before the party notified
              the opposing party of an intent to arbitrate; (3) whether a party either
7              requested arbitration enforcement close to the trial date or delayed for a
              long period before seeking a stay; (4) whether a defendant seeking
8              arbitration filed a counterclaim without asking for a stay of the
              proceedings; (5) whether important intervening steps [e.g., taking
9              advantage of judicial discovery procedures not available in arbitration]
              had taken place; and (6) whether the delay affected, misled, or prejudiced
10             the opposing party.

11  *Cox*, 533 F.3d at 1124 (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196 (2003)).

12  "Based on the public policy favoring arbitration, claims of waiver receive 'close judicial scrutiny' and

13  the 'party seeking to establish a waiver bears a heavy burden.'" *Lewis*, 205 Cal. App. 4th at 444 (citing

14  *St Agnes*, 31 Cal. 4th at 1195).

15         Plaintiff contends that Defendants' undertook at least two actions inconsistent with the right to

16  arbitrate: (1) arguing the AAA rules apply to the selection of the arbitrators; and (2) causing the AAA to

17  purport to remove the arbitrator selected by cCare. Doc. 15 at 5. Plaintiff's theory of waiver is far-

18  fetched in light of cases cited by Plaintiff. For example, in *Lewis*, waiver was found where the

19  defendant: (a) sought multiple merits rulings from the district court; and (b) delayed moving to compel

20  arbitration for more than four months, causing substantial prejudice to plaintiff, including forcing

21  Plaintiff to defend against motions seeking merits rulings and causing plaintiff to spend over six months

22  and over $40,000 in attorney fees, costs and expenses litigating the merits in court. *Lewis*, 205 Cal. App.

23  4th at 445-454. Nothing of the sort is alleged in this case.

24         Plaintiff cites *Brunzell Const. Co., of Nev. v. Harrah's Club*, 253 Cal. App. 2d 764, 779 (1967),

25

in support of its position that waiver exists in this case. But, Plaintiff's theory of its case stretches *Brunzell* beyond credulity. *Brunzell* concerned a dispute over a construction contract containing an arbitration agreement that provided a "demand for arbitration shall be made within a reasonable time after the dispute has arisen. In no case, however shall a demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract." *Id*. at 777. Both parties actively pursued litigation and took no steps toward arbitration for more than two years. *Id*. at 778-79. This was deemed a waiver of the right to arbitrate. In so holding, the 1967 decision in *Brunzell* quoted an even older decision, *Local 659 v. Color Corp. of Am*, 47 Cal. 2d 189, 195 (1956), for the proposition that waiver can be evidenced by "a failure by a party to proceed to arbitrate in the <u>manner</u> and at the time provided in the arbitration provision." In *Local 659*, there was evidence that one party refused to arbitrate the dispute and repudiated the arbitration provision and that the opposing party accepted that repudiation, amounting to a mutual rescission of the arbitration agreement. *Id*. at 198. Plaintiff hangs its hat on *Local 659*'s use of the words "in the manner," presumably because Plaintiff views Defendants' objections to its choice of arbitrator as going to the "manner" of arbitration, but provides no authority that actually applies this language to find waiver under similar circumstances. Even assuming the truth of Plaintiff's allegations, Plaintiff has not alleged a fact pattern that could plausibly support a finding of waiver in this case.[5]

   Accordingly, Philadelphia's motion to dismiss Plaintiff's claim that the right to arbitrate has been waived is GRANTED. Plaintiff generally requests leave to amend, but has not presented any argument

---

[5] Plaintiff's citation to *Americo Life, Inc., v. Robert L. Myer*, 440 S.W.3d 18 (Tex. 2014), is not persuasive. At best, that case tangentially supports Plaintiff's interpretation of the arbitration agreement. It does not, in any material way, support a finding that Plaintiffs have alleged sufficiently that Defendants waived the right to arbitrate under California law. Somewhat more relevant is *Brook v. Peak Int'l*, 294 F. 3d 668, 670-71 (5th Cir. 2002). Plaintiffs argue that *Brook* stands for the proposition that the AAA has a tendency to disregard arbitration agreements in inappropriate ways. Doc. 15 at 14-15. Plaintiffs argue that "[b]y taking advantage of AAA's problem of noncompliance with arbitration agreements, Defendants make it clear that they never intended to comply with the Court order or with the [terms in the arbitration clause] of the Policy." *Id*. Even assuming Plaintiff's interpretation of *Brook* correct, this still does not materially support a finding that Plaintiffs have alleged sufficiently that Defendants waived the right to arbitrate under the factors identified in *Cox*. (The Court notes that *Brook* does discuss waiver, but in a context that is not at all helpful to Plaintiff's case, finding that a party waived the right to object to the AAA's "unwarranted" departure from an agreed upon selection process by failing to object. 294 F. 3d at 673-74.)

1   suggesting how it could modify its factual allegations upon amendment. Plaintiff is therefore

2   ORDERED to show cause in writing within ten (10) days of entry of this order why, in light of the

3   reasoning above, this claim should not be dismissed without leave to amend.

4                    **b.      Remaining Claims Against Philadelphia.**

5           Plaintiff's remaining claims against Philadelphia for breach of contract, declaratory relief as to

6   insurance coverage, and breach of the covenant of good faith and fair dealing are the same as those

7   claims which Plaintiff stipulated in the prior litigation are subject to arbitration. These three original

8   claims are indisputably subject to arbitration under the Policy, provided the right to arbitration has not

9   been waived. Accordingly, Philadelphia's motion to dismiss is GRANTED as to Plaintiff's claims

10  against Philadelphia for breach of contract, declaratory relief as to insurance coverage, and breach of the

11  covenant of good faith and fair dealing. Whether leave to amend will be granted will turn on Plaintiff's

12  response to the order to show cause issued above.

13  **B.      Motion to Dismiss Claims Against PCHC.**

14          The Complaint alleges that PCHC is either an alter ego of or is directly liable for the actions of

15  Philadelphia because Philadelphia "is another fictitious business name of PCHC." Compl. at ¶¶ 2-4.

16  Defendants' motion to dismiss argues any claims against PCHC must be dismissed for failure to state a

17  claim because PCHC is not a party to the contract and therefore cannot be liable either directly or under

18  an alter ego theory. Doc. 7 at 11. Defendants' reply highlights the more pertinent point that the parties

19  previously stipulated that the claims against PCHC are subject to arbitration and requests enforcement of

20  that stipulation. Doc. 16 at 6. The stipulation approved by Judge Shubb unambiguously submits the

21  claims against PCHC to arbitration, with some reservations of rights to PCHC:

22              cCare and Defendants have agreed to submit the issues set forth in the
                complaint to binding arbitration pursuant to the terms of Part 6, Section
23              XIV.B. of Policy No.PHSD831802 issued to cCare, effective April 1,
                2013 to April 1, 2014 (the "Policy"), except for the following:
24
                                        ***
25
                                         12

B. PCHC reserves the right to contend that it is not a proper party to the issues in dispute in this matter but agrees to submit this dispute to arbitration and agrees that it will not make any motion or request to be removed from the case until after cCare has been given the opportunity to conduct discovery on whether PCHC is an "Underwriter" of the Policy as defined by the Policy.

A written stipulation to submit to binding arbitration is independently enforceable. *Porreco v. Red Top RV Ctr.*, 216 Cal. App. 3d 113, 130 (1989), reh'g denied and opinion modified (Dec. 21, 1989). Plaintiff makes no argument that the stipulation is invalid or otherwise unenforceable. Nor does Plaintiff attempt to withdraw its consent thereto. Rather, Plaintiff references the stipulation in its complaint and seeks its enforcement. Plaintiff, essentially, appears to have pleaded its way into arbitration of its claims against PCHC.

Moreover, pursuant to the FAA, "traditional state law contract principles allow nonparties to an arbitration agreement to enforce its terms through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotations omitted). If Plaintiff's allegations about alter ego and direct liability as to PCHC are true, which this Court must assume for purposes of a facial Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (or a Fed. R. Civ. P. 12(b)(6) motion to dismiss), PCHC stands in the shoes of Philadelphia such that any and all claims against PCHC are as subject to arbitration as those against Philadelphia.

Because the very stipulation Plaintiff seeks to enforce in the Complaint calls upon the parties to arbitrate any claims against PCHC in the first instance, Plaintiff's own complaint appears to destroy this Court's subject matter jurisdiction over Plaintiff's claims against PCHC. However, because this issue was not clearly raised by the motion to dismiss, Plaintiff will be afforded one opportunity to directly address this issue. Therefore, Plaintiff is ORDERED to show cause in writing within ten (10) days of issuance of this order why, in light of the other conclusions in this order, the claims against PCHC should not be dismissed for lack of subject matter jurisdiction.

### III. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above:

1.  Philadelphia's motion to dismiss all the claims against it for lack of subject matter jurisdiction is GRANTED. Plaintiff has requested leave to amend but has not sufficiently justified amendment. Plaintiff is ordered to show cause in writing within ten (10) days why amendment should be permitted.

2.  Plaintiff is also ordered to show cause in writing within ten (10) days why the claims against PCHC should not likewise be dismissed without leave to amend for lack of subject matter jurisdiction

**SO ORDERED**
**Dated: April 17, 2015**

**/s/ Lawrence J. O'Neill**
**United States District Judge**

14